505 A.2d 389

James Tarr, Petitioner *v.* Workmen's Compensation Appeal Board (Kayro Precision Casting Corp.), Respondents.

Argued December 10, 1985, before Judges Rogers and MacPhail, and Senior Judge Barbieri, sitting as a panel of three.

*Miriam Reimel,* for petitioner.

*Picard Losier,* with him, *Paul Dufallo* and *John Veith,* for respondent, Kayro Precision Casting Corporation.

Opinion by Judge MacPhail, February 26, 1986:

James Tarr (Claimant) appeals from a decision of the Pennsylvania Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision.

Claimant worked as a grinding wheel operator for Kayro Precision Casting Corp. (Employer). His work responsibilities included lifting and carrying, via a hand truck, metal castings contained in a barrel to

the wheel. On December 4, 1978, Claimant was pushing a barrel full of castings on its edge in order to place the handcart underneath the barrel when he felt a sharp pain in his lower back. He called his union president who also worked on Employer's premises, who in turn called the supervisor. Claimant's supervisor took Claimant to Lower Bucks Hospital in Ponstol, Pennsylvania. At the hospital, a doctor examined Claimant and prescribed medication. Claimant did not return to work that day.

Because the medication did not relieve Claimant's pain, he went to see Dr. Kun H. Cho, who admitted him to the Helene Fuld Hospital in Trenton, New Jersey. On December 7, 1978, Dr. Cho diagnosed Claimant as suffering from lower back syndrome due to trauma and a possible herniated disc. Claimant was released from the hospital on December 18, 1978, but continued out-patient treatment with Dr. Cho.

In early January, 1979, Claimant's father, who lived in Liberia, died and Claimant went to Liberia to take care of family business. Claimant remained in Liberia until September of 1980. While in Liberia, Claimant was under the care of a Dr. Karpeh, and Claimant alleges that he did not work in Liberia because of continuing pain.

When Claimant returned from Liberia, he went to see Dr. Cho, who again examined Claimant and concluded that Claimant was in exactly the same condition he was prior to his trip to Liberia. Dr. Cho prescribed medication for Claimant, and on September 29, 1980, Dr. Cho advised Claimant he could return to work for light duty, specifying that Claimant not lift more than twenty-five pounds.

Claimant filed a claim petition on March 2, 1981 alleging that he was totally disabled due to his back injury from December 4, 1978 to the present. A hearing was held on April 23, 1981, at which time Claimant

testified as to the onset of his injury. He testified that the combined weight of the metal castings and hand truck was more than 200-300 pounds. Claimant also testified that he was detained in Liberia for approximately seventeen months due to a revolution which prevented Claimant's return. The referee continued the hearing for receipt of "Claimant's medical".

The continued hearing was held November 10, 1982, at which time counsel for both Claimant and Employer indicated they had been trying to reach a settlement although there were no current plans for continuing negotiations. Claimant's counsel also indicated that Employer had had a medical examination conducted in March of 1982 and had not received a copy of that doctor's report. The referee granted Employer a continuance for counsel to continue negotiations and receive all medical reports.

At the next hearing, Employer's counsel stated, for the record:

Mr. Losier: In the matter of Mr. Tarr, we have decided to accept liability and pay the Claimant and at the same time we would like to provide Claimant with some vocational training or help in order to be able to get a job. We have not yet—I believe it's going to be resolved by stipulation of fact.

The Referee: Are you going to conclude it on wage stipulation of fact?

Mr. Losier: I believe we have a—I guess it's a question of finding the notice of comp. payable and pay him or draw up stipulation of fact but I believe if we have a stipulation of fact it will take too much of a period of time in order for the Claimant to get compensation.

Mr. Foster [Claimant's then counsel]: We're prepared to go either way as long as we

don't waive any additional rights to which we had and they'll be following [sic] a petition today asking for a hearing date in connection with the cost penalties and interest pursuant to the act. So, I wouldn't want any stipulation to waive any of our rights pursuant to those above provisions of the code.

(Transcript of January 20, 1983 Hearing at 1).

Although the record is far from clear, the parties were unable to reach a stipulation, and on May 10, 1983, the referee decided to take further testimony on Employer's behalf, despite strenuous objection by Claimant's counsel. Employer introduced the testimony of Mr. Daniel J. Burkart, a foreman of Employer, who testified that a grinder removes excess metal from stainless steel castings which range in weight from five ounces to thirty pounds. Employer also introduced the testimony of Mr. Michael Schneidman, executive director of Allied Vocational Services, who testified that in April of 1983, a number of jobs were available to Claimant within his job limitations but which were not offered to Claimant.

Employer also presented the deposition of Dr. Yves J. Jerome, M.D., taken March 23, 1983. Dr. Jerome examined Claimant on April 28, 1982. Dr. Jerome diagnosed Claimant as suffering from severe low back pain syndrome which was consecutive to a lumbrosacral strain and sprain (soft tissue injury). Dr. Jerome also testified that Claimant would be unable to return to his previous employment as a grinder but could return to work that involved "no heavy lifting above 30 pounds, no heavy pushing, pulling, 30 pounds, no deep bending, no repeated bending, and no constant walking and standing." (Deposition of Dr. Jerome at 22).

The referee made the following pertinent findings of fact:

2. On December 4, 1978, while in the course of his employment, Claimant injured his low [sic] back.

. . . .

4. On January 8, 1979, [Claimant] went to Liberia, Africa through his own will and stayed in Liberia for more than 20 months taking care of his family business.

. . . .

6. Both the Claimant and the employer's physician agree that the Claimant was not totally disabled and he was capable of working. The Referee believes and accepts the fact that the Claimant was capable of working.

7. The Referee does not believe the Claimant has been disabled since December 4, 1978 in that Claimant has been able to travel to Liberia, stayed in Liberia for 20 months and that he returned to the United States and his own treating physician had released him to return to light duty.

8. Referee finds credible the opinion that the Claimant was capable of doing light work.

9. Referee believes that there was light duty available with the employer and giving [sic] the fact that the Claimant now resides in Brooklyn, New York, the Referee believes that there were light duty and sedentary jobs available in New York.

10. Referee believes that the Claimant was disabled from December 5, 1978 until the time he went to Liberia on January 8, 1979.

11. Referee believes that he has been able to work when he returned to the United States and was so certified by his doctor.

The referee concluded that Claimant failed to prove he had been totally disabled since his trip to Liberia

because of the work-related injury. The referee also concluded that there were jobs available within Claimant's physical limitations. The referee awarded Claimant total disability compensation only for the period December 4, 1978 to January 8, 1979 and ordered compensation thereafter terminated.

Claimant appealed the referee's decision to the Board, which affirmed. The Board noted that "[w]ith respect to the period of time from January 8, 1979 to September, 1980, the Referee determined (Finding of Fact No. 11) that the Claimant's testimony to the effect that he was disabled was not credible." Decision of the Board, dated November, 1984, at 2. The instant appeal followed.

Claimant first argues that it was error for the referee to permit Employer to present testimony in its behalf after the Employer already agreed to accept liability. It is true that "an admission of an attorney during the course of a trial is binding upon his client." *Piper Aircraft Co. v. Workmen's Compensation Appeal Board, (Bibey),* 86 Pa. Commonwealth Ct. 614, 618-19, 485 A.2d 906, 908-909 (1985), citing *Eldridge v. Melcher,* 226 Pa. Superior Ct. 381, 313 A.2d 750 (1973). Claimant however, places too much emphasis on the weight to be given the admission. All the Employer did, in its statement by counsel, was admit to liability: the statement did not cover the extent of Claimant's disability or how long Employer would agree to pay compensation. These items were to be resolved by stipulation. The parties were unable to resolve their differences by stipulation, and the referee properly permitted Employer to present testimony on these issues. Employer never denied that they were liable—they only contested the extent of their liability. We hold that the referee did not err in accepting Employer's evidence.

Claimant next argues that there is nothing in the record to support the referee's finding that Claimant must have been working while he was in Liberia because Claimant's uncontroverted testimony was to the contrary. However, the referee specifically found that Claimant was not a credible witness, and credibility issues are for the referee to resolve, not this Court. *Snyder v. Workmen's Compensation Appeal Board,* 50 Pa. Commonwealth Ct. 227, 412 A.2d 694 (1980).

Claimant also argues that the referee erred in finding that work was available to Claimant. We agree. Where a medical expert testifies that a claimant is capable of performing work, the controlling date for purposes of determining partial disability is the date he examined Claimant. *See Piper Aircraft Co.,* 86 Pa. Commonwealth Ct. at 618, 485 A.2d at 908. Here, Claimant's physician did not certify him as capable of returning to work until September 29, 1980. We are of the opinion that there is not substantial evidence to support the referee's finding that Claimant was able to return to work on January 8, 1979, the date Claimant left for Liberia.

However, September 29, 1980 may or may not be the controlling date: "[u]nless the Employer proves also that there is available work [as of that date] within the Claimant's physical limitations, however, the medical evidence of partial as opposed to total disability in and of itself is insufficient to reduce the award." *Livingston v. Workmen's Compensation Appeal Board,* 67 Pa. Commonwealth Ct. 497, 498, 447 A.2d 715, 716 (1982). In the instant case, although the referee found that there was light duty work available to Claimant (Finding of Fact No. 9), he failed to specify *when* such work was available. His findings, therefore, are inadequate to enable us to perform our

review function. We, accordingly, must remand for additional findings consistent with this opinion.

ORDER

The order of the Workmen's Compensation Appeal Board at No. A-87174 dated November 1, 1984, is hereby reversed and the matter is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.